IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN CLINT DRAPER,

    Plaintiff,            No. CIV S-02-0716 FCD GGH P

   vs.

JEFFERY HARRIS, et al.,

    Defendants.        FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

    Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion filed August 12, 2005. After carefully considering the record, the court recommends that defendants' motion be granted.

II. Summary Judgment Standards Under Fed. R. Civ. P. 56

    Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On October 28, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

IV. <u>Discussion</u>

This action is proceeding on the amended complaint filed March 18, 2003. The defendants are Correctional Officers Harris and Williams, Captain Padilla and Lieutenant Rodriguez. On July 6, 2004, the court dismissed the verbal harassment claims against defendant Harris as well as all claims against former defendants Sisto and Carey.

Plaintiff alleges that on September 16, 2001, defendant Harris used excessive force against him. Plaintiff alleges that defendant Harris filed false disciplinary charges in retaliation for plaintiff's use of prison grievance procedures and attempts to secure medical care, and refused to call for medical aid for plaintiff's asthma condition on April 17, 2001. Plaintiff alleges that the other defendants were involved in procuring false documentation in support of the false disciplinary charges. Plaintiff also claims that defendants referred false charges of assault and battery on a peace officer to the Solano County District Attorney's Office.

A. <u>Defendant Harris</u>

*Excessive Force*

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992). When determining whether the force was excessive, we look to the "extent of the injury..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" <u>Id.</u>, at 7.

Defendants argue that defendant Harris did not use excessive force against plaintiff. In support of this claim, defendants submitted the declaration of defendant Harris which describes the September 16, 2001, incident:

/////

4

> 3. On September 16, 2001, I was assigned to check identification and movement passes to verify early workers for the morning meal release.
> 4. Draper was moving from his housing unit to the primary clinic.
> 5. Under these circumstances, Draper was required to stop and show identification and medical passes.
> 6. Draper failed to comply and repeated requests to tell me where he was going and to present his identification and pass.
> 7. Instead, Draper kept on walking; and ignored my direct orders.
> 8. I then walked past Draper; stopped and extended my right arm.
> 9. Draper walked into me after ignoring my repeated orders to stop.
> 10. After walking into me, Draper kept on walking and only complied after one more order to stop.
> 11. My actions were so minimal that Draper's forward progress was not impeded, he was not knocked to the ground, and, in Lieutenant Padilla's opinion, no force was actually used.
> 12. The maintenance of safety, security, discipline and internal order within a prison context is dependent upon the controlled movement of inmates.
> 13. Under these circumstances, an inmate is not allowed to disregard correctional staff's efforts to control movement.
> 14. As such Draper was required to stop and show his identification and medical pass upon my request.
> 15. In addition, inmates are not allowed to disregard direct orders regardless of the circumstances.
> 16. Since Draper refused my repeated direct orders to stop, some form of physical contact was reasonably necessary to maintain order and discipline.
> 17. I used only that amount of physical contact as was necessary to obtain inmate compliance with his direct order.
> 18. This incident was investigated by both Lieutenant Padilla and Officer Hines.

Exhibits, Defendants' Summary Judgment Motion, Harris declaration.

Plaintiff's March 18, 2003, amended complaint is not verified. Accordingly, the court cannot consider the allegations in this pleading as supplementing his opposition to defendants' motion. Fed. R. Civ. P. 56(e). Plaintiff's opposition filed July 19, 2005, is verified. However, plaintiff's briefing in support of his opposition does not specifically address the September 16, 2001, incident. Plaintiff's opposition does not, for example, describe his version of the incident.

Plaintiff submitted numerous exhibits in support of his opposition. Fed. R. Civ. P. 56(e) provides in relevant part that,

/////

/////

5

> Supporting...affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith...

"It is well established that unauthenticated documents cannot be considered on a motion for summary judgment." Hal Roach Studios v. Feiner, 896 F.2d 1524, 1550 (9th Cir. 1989). "To be considered by the court 'documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'" Id., quoting Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). "A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." Id..

The exhibits attached to plaintiff's opposition are not properly authenticated. Accordingly, the court may not consider them in evaluating defendants' motion. King v. Aliyeh, 814 F.2d 565, 567 (9th Cir. 1987) (pro se litigants must follow the same rules of procedure that govern other litigants). However, defendants submitted one of the exhibits submitted by plaintiff in his opposition in support of his excessive force claim. Because defendants' exhibits are properly authenticated, the court will consider this exhibit.

In an administrative appeal, plaintiff alleged that on September 16, 2001, defendant Harris attacked and assaulted him. Defendants' Exhibits, p. 18. Plaintiff stated that defendant Harris used his upper body and shoulder to attack and assault him. Id. This exhibit does not describe the extent of the force plaintiff alleges defendant Harris used. Nor does this exhibit describe any injury suffered by plaintiff.[1] Plaintiff does not allege, for example, that defendant Harris slammed his upper body into plaintiff and caused him to fall to the floor for no apparent reason. The version of events described by plaintiff in his appeal is not necessarily

---

[1] Although the court is precluded from considering plaintiff's unauthenticated exhibits and unverified pleadings, it observes that no where else in the record does plaintiff describe the September 16, 2001, incident in any more detail than that contained in the administrative appeal discussed above.

1  inconsistent with the version of events described in defendant's declaration. For these reasons,
2  the court finds that plaintiff has not met his burden of demonstrating the existence of materially
3  disputed facts regarding defendant's use of force. Because defendant's declaration indicates that
4  the force was applied in a good faith effort to maintain discipline and not sadistically to cause
5  harm, defendant should be granted summary judgment as to this claim.

6  *Inadequate Medical Care*

7  In order to state a § 1983 claim for violation of the Eighth Amendment based on
8  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence
9  deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.
10  285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively
11  serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter,
12  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.
13  1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference."
14  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

15  A serious medical need exists if the failure to treat a prisoner's condition could
16  result in further significant injury or the unnecessary and wanton infliction of pain. Indications
17  that a prisoner has a serious need for medical treatment are the following: the existence of an
18  injury that a reasonable doctor or patient would find important and worthy of comment or
19  treatment; the presence of a medical condition that significantly affects an individual's daily
20  activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900
21  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01
22  (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other
23  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24  In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court
25  defined a very strict standard which a plaintiff must meet in order to establish "deliberate
26  indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. <u>Id.</u> at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id.</u> at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense—a subjective standard—disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42, 114 S. Ct. at 1981. However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." <u>McGuckin</u>, 974 F.2d at 1061.

/////

1    Plaintiff alleges that on April 17, 2001, defendant Draper failed to summon
2 medical staff after plaintiff informed him that he was having an asthma attack. Defendants argue
3 that they are entitled to summary judgment as to this claim because a thorough, documented
4 factfinding investigation of the incident determined that plaintiff's allegations could not be
5 sustained. Defendants cite the first and second level responses to plaintiff's administrative
6 appeals regarding this incident. The first level appeal response does not describe the April 17,
7 2001, incident and merely states that a fact finding inquiry could not sustain plaintiff's
8 allegations. This appeal does not describe the factfinding inquiry in any detail. Defendants'
9 Exhibits, p. 11. The second level appeal describes the incident:

> It is your position on April 17, 2001, Correctional Officer (CO) Harris attacked you with verbal threats. You allege he and three other officers came to your cell and CO Harris told you "you got a fucking A day." You claim he told you to get your ass up and then verbally attacked you by stating "your days on yard 2 were numbered." You contend you told CO Harris you were sick and had a medical condition that restricted you from working outside. You allege you were having and [sic] asthma attack and told CO Harris to call the Correctional Lieutenant (Lt.), Medical Technical Assistant (MTA) and physician but instead he left you to suffer and die.

15 Defendants' Exhibits, p. 12.

16    The second level appeal also found, without any explanation, that plaintiff's
17 allegations could not be supported. Defendants' Exhibits, pp. 13-14. In his declaration,
18 defendant Harris states that he did not deny medical attention for plaintiff on April 17, 2001.
19 Harris decl., ¶ 23.

20    The court first considers whether plaintiff had a serious medical need. Neither
21 party appears to dispute that plaintiff had an asthma attack on April 17, 2001. In an
22 administrative appeal filed by plaintiff regarding the incident, he stated that during the incident
23 he was wheezing and could hardly breath. Defendants' Exhibits, p. 8. These circumstances
24 sufficiently demonstrate that plaintiff's asthma attack constituted a serious medical need.

25    The court next considers whether defendant Harris acted with deliberate
26 indifference. In analyzing this issue, the court must frame plaintiff's claim. Plaintiff's claim that

9

defendant failed to summon medical staff while he suffered an asthma attack suggests a claim for delay in medical care. In other words, plaintiff is claiming that because defendant did not summon medical care, plaintiff had to wait to receive medical attention. To succeed on this claim, plaintiff must demonstrate that he suffered some harm as a result of the delay. McGuckin, 974 F.2d at 1060.

In the summary judgment motion, defendants argue that plaintiff alleges no injury as a result of the delay of medical care. Plaintiff's opposition does not address this contention. The court has reviewed defendants' authenticated exhibits and finds no evidence of injury or harm as a result of defendant Harris' failure to summon medical staff.[2] Because plaintiff has not demonstrated that he suffered any harm or injury as a result of defendant Harris' alleged failure to summon medical staff on April 17, 2001, defendant Harris should be granted summary judgment with respect to this claim.

*Retaliation*

Plaintiff alleges that in retaliation for filing inmate grievances against him on April 17, 2001, and September 16, 2001, defendant Harris charged him with battery on a peace officer based on the September 16, 2001, incident.

Prisoners cannot be retaliated against by prison officials for filing inmate grievances. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, [footnote 5], and (5) the action did not reasonably advance a legitimate correctional goal." Id., 567-568.

---

[2] Neither plaintiff's unverified amended complaint nor the unauthenticated exhibits attached to the opposition, including medical records, demonstrate any injury or harm as a result of the delay of medical care.

10

Defendants argue that they are entitled to summary judgment as to plaintiff's retaliation claim because plaintiff does not allege that the filing of the rules violation report chilled the exercise of his First Amendment rights. Defendants argue that, to the contrary, over a three-year period following the September 23, 2001, rules violation report, plaintiff filed 16 appeal forms on a variety of issues. Defendants' Exhibits 51-52.

In Rhodes v. Robinson, the Ninth Circuit also indicated that an allegation of harm could be sufficient if the inmate could not allege a chilling effect:

> If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect. Alleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety. See, e.g., Pratt, 65 F.3d at 807 (deciding that alleged harm was enough to ground a First Amendment retaliation claim without independently discussing whether the harm had a chilling effect); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)(same).

408 F.3d at 568 n. 11.

In the instant case, the harm alleged by plaintiff was the filing of the rules violation report charging him with battery on a peace officer. Plaintiff was found guilty of these charges. Defendants' Exhibits, p. 43. On November 20, 2001, the charges were dismissed because defendant Harris' report contained the wrong date of the incident. Id., p. 44. On November 20, 2001, defendant Rodriguez issued a chrono containing the information from defendant Harris' rules violation report. Id., p. 45.

Because the rules violation was dismissed, it cannot constitute an injury for purposes of plaintiff's retaliation claim. The chrono itself is an informational memorandum contained in plaintiff's central file. Any injury stemming from the chrono is, at best, minimal. Because plaintiff suffered no harm as a result of his filing of grievances against defendant Harris, defendants should be granted summary judgment as to this claim.

Defendants also argue that defendant Harris had legitimate correctional goals when he filed the rules violation report against plaintiff. The court need not reach this claim because it finds that defendants are entitled to summary judgment for the reasons discussed

above.

The court understands from <u>Rhodes</u> that the injury suffered from retaliation does not have to be great before a plaintiff is entitled to proceed in federal court. However, there must be a de minimus threshold for such injury, which if not met, spells the end of litigation. If the rule were otherwise, the federal courts will simply become a disciplining nanny for every "bump" occurring in prison life allegedly caused by strained relations between a prisoner and his keepers.

### B.  Remaining Claims

Plaintiff alleges that the other defendants were involved in procuring false documentation in support of the false disciplinary charges. Plaintiff is apparently claiming that the other defendants conspired with defendant Harris to retaliate against him for filing the grievances. Defendants Rodriguez, Williams and Padilla should be granted summary judgment as to this claim for the same reason the court recommends that defendant Harris be granted summary judgment as to plaintiff's retaliation claim: plaintiff did not demonstrate that he suffered any harm as a result of the rules violation report.

Finally, plaintiff also claims that defendants referred false charges of assault and battery on a peace officer to the Solano County District Attorney's Office. The legal theory behind this claim is unclear. Defendants have, not unreasonably, interpreted these allegations to be alleging a claim for violation of the right to due process. The court construes the amended complaint to be alleging a retaliation claim in connection with these allegations rather than a due process claim. To the extent plaintiff is alleging a due process claim, because he does not allege what particular due process he did not receive in connection with the referral to the District Attorney's Office, defendants would be entitled to summary judgment.

Plaintiff is claiming that the referral of the allegedly false charges was further retaliation for his filing of administrative appeals. However, plaintiff alleges no injury as a result of the referral. There is no evidence in the record, for example, that plaintiff was ever prosecuted based on the referral. The referral itself is not a sufficient harm to state a retaliation claim. For

these reasons, defendants should be granted summary judgment with respect to this claim.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' July 5, 2005, motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  11/9/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
draper.sj